J-S05045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LANCE PATRICK GREENAWALT, | : | |
| | : | |
| Appellant | : | No. 892 MDA 2019 |

Appeal from the PCRA Order Entered February 19, 2019
n the Court of Common Pleas of Cumberland County
Criminal Division at No(s):  CP-21-CR-0000347-2011

BEFORE:  SHOGAN, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED APRIL 21, 2020**

Lance Patrick Greenawalt ("Greenawalt") appeals from the Order denying his first Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").  ***See*** 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

On April 30, 2006, Greenawalt broke into the home of Daniel Keys ("Keys") and assaulted Keys by throwing boiling water on his face and striking him numerous times in the head, arms, and torso with a baseball bat.[1]  As a result of the attack, Keys suffered injuries to his eyes, lacerations to his head that required 103 stitches, three broken fingers on each hand, a broken wrist, broken hand, and burns to his head and the surrounding area.  Keys only

_____

[1] Keys was not at his home when Greenawalt broke in.  Greenawalt attacked Keys when Keys returned home and entered through the front door.

briefly saw his attacker, who was wearing a mask, and was unable to identify him to police.

Pennsylvania State Police Trooper Benjamin Wilson ("Trooper Wilson") investigated Keys's assault. On September 7, 2010, Trooper Wilson was at Camp Hill State Correctional Institution and was informed by prison personnel that Greenawalt, who was incarcerated there on unrelated convictions, had been soliciting a fellow inmate, Timothy Bryce ("Bryce"), to commit murder for Greenawalt. Trooper Wilson and Pennsylvania State Trooper Shaun Pugh ("Trooper Pugh") interviewed Bryce, who stated that Greenawalt had solicited Bryce to murder John Lloyd ("Lloyd") and Adams County Court of Common Pleas Judge Michael George ("Judge George"). Lloyd is Keys's brother. Judge George had presided over Greenawalt's previous criminal trial on unrelated charges. Bryce also stated that Greenawalt had admitted to committing the April 20, 2006, burglary of and assault on Keys.

After substantiating Bryce's claims, Trooper Wilson filed with this Court an Application for the interception of communications (the "Wiretap Application"), in order to install a recording device in the prison cell shared by Greenawalt and Bryce. This Court found that there was probable cause to believe that communications would take place between Greenawalt and Bryce regarding the planning and commission of illegal acts, and issued an Order Authorizing Interception of Communications (the "Wiretap Order").

Between October 5, and November 24, 2010, Greenawalt and Bryce engaged in several conversations relating to Greenawalt's prior solicitations to kill Judge George and Lloyd, and Greenawalt also solicited Bryce to murder Keys. Trooper Wilson subsequently interviewed Greenawalt, and advised Greenawalt that his incriminating statements had been recorded. Greenawalt admitted to engaging in these conversations, but claimed that they were just "jail house talk," and not meant to be taken seriously.

Greenawalt was subsequently charged, in relevant part, with one count each of attempt to commit criminal homicide, aggravated assault and burglary, and three counts of criminal solicitation to commit criminal homicide. Greenawalt filed an Omnibus Pretrial Motion, which contained, *inter alia*, Motions to (1) suppress the incriminating statements made to Trooper Wilson; (2) sever the three counts of criminal solicitation to commit criminal homicide from the charges relating to Greenawalt's assault of Keys; and (3) suppress the recordings taken from the recording device that was planted in Greenawalt's prison cell. Following a hearing and the submission of briefs, the trial court granted in part Greenawalt's Motion to sever charges, and denied the two Motions to suppress. The trial court severed the charge of solicitation to commit homicide relating to Judge George from the remaining charges.

On March 14, 2013, the Commonwealth and Greenawalt filed a Stipulation, wherein they agreed that Bryce had been previously convicted of

certain enumerated crimes, including obstruction of justice and false reports, and that this evidence would be admissible at trial for *crimen falsi* purposes. On March 15, 2013, Greenawalt filed a Motion *in limine*, seeking to prevent Bryce from testifying at trial based on these crimes, which purportedly made his testimony unreliable. On March 18, 2013, the trial court denied the Motion.

Following the two severed jury trials, Greenawalt was found guilty of one count each of attempt to commit criminal homicide, aggravated assault, criminal attempt to commit aggravated assault and burglary, and three counts of solicitation to commit criminal homicide.[2] Greenawalt was sentenced to an aggregate term of 40 to 90 years in prison.[3]

This Court affirmed Greenawalt's judgment of sentence. **See Commonwealth v. Greenawalt**, 106 A.3d 176 (Pa. Super. 2014) (unpublished memorandum).[4] Greenawalt did not seek allowance of appeal with the Pennsylvania Supreme Court.

---

[2] Greenawalt's trial regarding the charge for criminal solicitation to commit criminal homicide relating to Judge George occurred over a year after the trial for the other charges.

[3] Greenawalt was sentenced to serve 10 to 20 years in prison on the charge for solicitation to commit criminal homicide relating to Judge George, and 30 to 70 years in prison on the remaining charges. The sentences were ordered to run consecutively.

[4] Greenawalt filed his Notice of Appeal following his first trial, and he did not appeal his judgment of sentence for his conviction of criminal solicitation to commit criminal homicide relating to Judge George.

On August 25, 2015, Greenawalt filed the instant timely PCRA Petition. Greenawalt subsequently filed two Amended PCRA Petitions, with the second Amended Petition being filed on June 28, 2017. Greenawalt claimed in his second Amended Petition several allegations of ineffective assistance of counsel, including the claims discussed herein, and trial counsel's failure to request a pre-sentence mental health examination. Following a hearing, the PCRA court granted Greenawalt's PCRA Petition on the claim regarding trial counsel's failure to request a pre-sentence mental health examination, and denied his Petition in all other respects. The PCRA court vacated Greenawalt's judgment of sentence; ordered that he undergo a mental health examination; and directed the preparation of a pre-sentence investigation report, to include the results of Greenawalt's mental health examination. Greenawalt filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

On appeal, Greenawalt presents the following questions for our review:

I. Whether the PCRA [c]ourt erred in denying [Greenawalt] relief based upon [Greenawalt's] claims that trial counsel was ineffective by failing to file a motion to exclude and suppress the [W]iretap [A]pplication used to intercept [Greenawalt's] oral communications pursuant to Pennsylvania's Wiretapping and Electronic Surveillance Control Act?

II. Whether the PCRA [c]ourt erred in denying [Greenawalt] relief based on [Greenawalt's] claim that trial counsel was ineffective by failing to conduct a pretrial mental health examination of [Greenawalt] to determine whether [Greenawalt] could form the specific intent to commit the criminal acts of which he was accused?

III. Whether the PCRA [c]ourt erred in denying [Greenawalt] relief based upon [Greenawalt's] claim that trial counsel was ineffective by failing to investigate and present character evidence at trial?

IV. Whether the PCRA [c]ourt erred in denying [Greenawalt] relief based upon [Greenawalt]'s claim that trial counsel was ineffective by failing to request severance of the crimes of violence that prejudiced [Greenawalt] at trial by presenting evidence of aggressive and assaultive behavior to the jury?

Brief for Appellant at 4.

"The standard of review of an order [denying] a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." *Commonwealth v. Weimer*, 167 A.3d 78, 81 (Pa. Super. 2017). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Id.* (citation omitted).

To prevail on a claim of ineffective assistance of counsel, a petitioner must plead and prove by a preponderance of the evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). Specifically, a petitioner must establish that "the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that [the a]ppellant was prejudiced." *Commonwealth v. Charleston*, 94 A.3d 1012, 1020 (Pa. Super. 2014). "A PCRA petitioner must address each of these prongs on appeal." *Commonwealth v. Wholaver*, 177 A.3d 136, 144 (Pa. 2018).

A court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if

- 6 -

a claim fails under any necessary element of the ineffectiveness test, the court may proceed to that element first. Finally, counsel cannot be deemed ineffective for failing to raise a meritless claim.

***Commonwealth v. Tharp***, 101 A.3d 736, 747 (Pa. 2014).

In his first claim, Greenawalt alleges that his trial counsel, Michael D. Rentschler, Esquire ("Attorney Rentschler"), was ineffective in failing to file a motion to exclude the evidence obtained from the recording device. ***See*** Brief for Appellant at 19-25. Greenawalt purports to challenge this Court's Wiretap Order under Section 5721.1(b)(2) of the Wiretap Act, ***see*** 18 Pa.C.S.A. §§ 5701-5782. Greenawalt claims that the Wiretap Application and the Affidavit of Probable Cause, which was attached thereto, were defective because they did not disclose (1) Bryce's criminal history; (2) the fact that the Pennsylvania State Police had been investigating a claim that a third-party had previously solicited Bryce to kill a state trooper; and (3) an indication as to whether the personnel who intended to set up and use the recording device were "B" certified. ***Id.*** at 20-25. Greenawalt argues that had Attorney Rentschler filed a motion to suppress the evidence obtained from the recording device on these grounds, the trial court would have likely suppressed the evidence, and Greenawalt would have been acquitted. ***Id.*** at 25.

Section 5721.1 of the Wiretap Act provides that an aggrieved party may move to exclude the contents of a wiretap or evidence derived therefrom on six grounds. This creates a situation where a Common Pleas judge can rule that a Superior Court judge erred when determining that there was a legal basis to authorize a wiretap. Section 5721.1 further provides that the only judicial remedies and sanctions for non-constitutional violations of the wiretap provisions are those exclusively found in 5721.1. The plain language of section 5721.1 limits the

availability of suppression as a remedy for non-constitutional violations to six grounds specifically enumerated.

***Commonwealth v. Steward***, 918 A.2d 758, 760 (Pa. Super. 2007) (citation omitted).

Section 5721.1(b)(2) provides that a recording may be suppressed where "[t]he order of authorization … was not supported by probable cause with respect to the matters set forth in section 5710(a)(1) and (2) (relating to grounds for entry of order)." 18 Pa.C.S.A. § 5721.1(b)(2).

Subsections 5710(a)(1) and (2) of the Wiretap Act state as follows:

**(a) Application.--**Upon consideration of an application, [a Superior Court] judge may enter an *ex parte* order, as requested or as modified, authorizing the interception of wire, electronic or oral communications anywhere within the Commonwealth, if the judge determines on the basis of the facts submitted by the applicant that there is probable cause for belief that all the following conditions exist:

(1) the person whose communications are to be intercepted is committing, has or had committed or is about to commit an offense as provided in section 5708 (relating to order authorizing interception of wire, electronic or oral communications);

(2) particular communications concerning such offense may be obtained through such interception;

18 Pa.C.S.A. § 5710(a)(1), (2). Aggravated assault and burglary are included offenses under Section 5708. ***See id.*** § 5708(a)(1).

The standard for determining whether probable cause existed for an order authorizing interception of telephone communications is the same as that used to determine probable cause for search warrants.

….

- 8 -

> [I]n an application for a wiretap, the Commonwealth must establish probable cause to believe that (1) the person whose communication is to be intercepted has committed an offense as provided in the state wiretap law, 18 Pa.C.S.[A. §§ 5701-5782], (2) communications concerning that offense will be transmitted, and (3) such communications will be intercepted on the facility under surveillance. In reviewing the adequacy of the application to support the issuance of an order of authorization, we will interpret the application in a common sense manner, not overly technical, with due deference to the findings of the issuing authority.

*Commonwealth v. Birdseye*, 637 A.2d 1036, 1042 (Pa. Super. 1994) (quotation marks and some citations omitted).

Here, the Affidavit of Probable Cause indicates that Bryce described to Troopers Wilson and Pugh, in detail, how Greenawalt had repeatedly asked Bryce to kill two people for Greenawalt, and how Greenawalt had admitted to assaulting Keys with a baseball bat at Keys's home. *See* Wiretap Application, 9/17/10, at Exhibit A (admitted into evidence at 10/3/11 pre-trial hearing as Commonwealth Exhibit 1). Bryce told the troopers that Greenawalt described how Bryce should conduct the murders, including detailed descriptions of the homes of the two targets. *Id.* The Affidavit further states that Trooper Wilson corroborated the details provided by Bryce, including the location and description of the homes of Greenawalt's targets, which were accurate "even though [Bryce] has no familiarity with the [city where the homes were located]." *Id.* Finally, Trooper Wilson stated in the Affidavit that he believed further evidence of the solicitation to commit murder would be gathered through use of a recording device. *Id.*

Our review of the Wiretap Application reveals that it contains facts sufficient to establish probable cause to support the issuance of the Wiretap Order. *See* 18 Pa.C.S.A. § 5710(a); *Birdseye*, *supra*. Therefore, because Greenawalt's underlying claim lacks merit, his ineffectiveness claim fails.[5, 6] *See Tharp*, *supra*.

In his second claim, Greenawalt alleges that Attorney Rentschler was ineffective in failing to seek a pretrial mental health examination, and in failing to present the result of said examination as evidence at trial. *Id.* at 25-30. Greenawalt points to the testimony of clinical and forensic psychologist Frank M. Dattilio, Ph.D. ("Dr. Dattilio"), from Greenawalt's PCRA hearing, that

_____

[5] To the extent that Greenawalt claims that his counsel was ineffective for failing to file a motion for suppression under Section 5721.1(a)(3) and on constitutional grounds, Greenawalt fails to explain how this Court's Wiretap Order granting placement of the recording device was materially insufficient, and how Greenawalt's constitutional rights were violated, with pertinent citations to case law and relevant argument. *See Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); *see also* Pa.R.A.P. 2119. Accordingly, these claims are waived.

[6] We acknowledge Greenawalt's citation to *Commonwealth v. Hashem*, 584 A.2d 1378 (Pa. 1991) (holding that a violation of any provision of the Wiretap Act is grounds for suppression of evidence), and his claim that the Wiretap Application was defective under Section 5710 of the Wiretap Act. However, "the *Hashem* case interpreted the Wiretap Act before it was amended to include the exclusive remedy provision," *Commonwealth v. Steward*, 918 A.2d 758, 760 n.6 (Pa. Super. 2007) (citing *Commonwealth v. Donahue*, 630 A.2d 1238, 1248 n.11 (Pa. Super. 1993)), and a violation of Section 5710 is not an included ground for suppression. *See* 18 Pa.C.S.A. § 5721.1(a); *Steward*, *supra*. Accordingly, this claim fails.

Greenawalt suffers from major depressive disorder and generalized anxiety disorder. *Id.* at 26. According to Greenawalt, Dr. Dattilio's testimony regarding Greenawalt's mental disorders may have convinced the jury that he lacked the necessary intent to be convicted of criminal attempt and criminal solicitation. *Id.* At 27-29. Greenawalt argues that Attorney Rentschler lacked any reasonable basis for not subjecting him to a mental health examination prior to trial, and that had an expert conducted a pretrial examination and testified at his trial, the jury may have found him not guilty. *Id.* at 29-30.

Here, Greenawalt conflates two claims: (1) Attorney Rentschler should have noticed, before trial, that Greenawalt suffered from mental illness and submitted Greenawalt to a mental health examination; and (2) Attorney Rentschler should have had an expert witness testify at Greenawalt's trial. Greenawalt fails to explain, on both grounds, how his particular diagnoses of generalized anxiety disorder and major depressive disorder are relevant to his ability to form intent. *See Johnson*, 985 A.2d at 924; *see also* Pa.R.A.P. 2119. Accordingly, this claim is waived.

In his third claim, Greenawalt alleges that Attorney Rentschler was ineffective in failing to investigate, and present at trial, character evidence of his reputation for peacefulness and non-violence. *See* Brief for Appellant at 30-35. Greenawalt argues that had his trial counsel "succeeded in presenting relevant character testimony, there is a reasonable probability that the outcome of the trial would have been different." *Id.* at 35.

Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary. ***Commonwealth v. Basemore***, … 744 A.2d 717, 735 ([Pa.] 2000) (citing [***Strickland v. Washington***], 466 U.S. [668,] 691 … [(1984)]). … The duty to investigate, of course, may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty … may lead to a finding of ineffective assistance.

***Commonwealth v. Johnson***, 966 A.2d 523, 535-36 (Pa. 2009).

When raising a failure to call a potential witness claim, the PCRA petitioner satisfies the performance and prejudice requirements of the ***Strickland*** test by establishing that:

(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Id.*** at 536.

Here, Greenawalt fails to establish that a witness was available to testify at his trial. ***See Johnson***, 966 A.2d at 536. Accordingly, Greenawalt has failed to satisfy the performance prong of the ***Strickland*** test, and his third ineffectiveness claim fails. ***See Charleston***, ***supra***.

In his fourth claim, Greenawalt argues that Attorney Rentschler was ineffective in failing to request severance of the charges relating to his assault of Keys from the charges relating to his solicitation to commit homicide. ***See*** Brief for Appellant at 36-39. However, our review discloses that Attorney Rentschler filed a Motion to sever the charges relating to the separate incidents. Indeed, as stated by the trial court,

> [p]rior to trial, [Attorney Rentschler] filed an [O]mnibus [P]retrial [M]otion. The [M]otion … sought to sever the trial on the burglary, aggravated assault, and attempt to commit criminal homicide charges arising out of the incident in 2006 … from trial on the three counts of solicitation to commit criminal homicide arising out of the prison events in 2010 … citing the prejudicial effect of the former charges, involving actual violence, upon the defense of the latter charges, which did not.

*See* Trial Court Opinion, 2/19/19, at 3 (footnotes omitted). Accordingly, because Greenawalt's underlying claim lacks arguable merit, his fourth ineffectiveness claim fails.

Based on the foregoing, we affirm the PCRA court's Order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/21/2020